**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>CYNTHIA M. GREENE,<br><br>　　　　　　　　　Debtor | Chapter 13<br>Case No. 15-10912-FJB |

**MEMORANDUM OF DECISION**

The matter before the Court is a motion by the chapter 13 debtor under Fed. R. Bankr. P. 3002.1(h) for determination of whether she has paid all required postpetition amounts on her mortgage debt, of which the current holder is Community Loan Servicing, LLC. [1] After an evidentiary hearing, and for the reasons set forth below, I conclude that she has not.

**PROCEDURAL HISTORY**

Cynthia M. Greene( the "Debtor") filed a voluntary petition for relief under chapter 13 on March 14, 2015.  She filed and obtained confirmation of a chapter 13 plan of reorganization, under which, as to her mortgage debt, then held by JP Morgan Chase, N.A. ("Chase"), she elected and committed herself to the so-called "cure and maintain" option, requiring that she cure her prepetition arrearage to the mortgagee and, while the case is pending, maintain her payments to the mortgagee. *See* 11 U.S.C. § 1322(b)(5).  She completed her plan payments to the Trustee in June of 2020.  On June 19, 2020, following the completion of all plan payments, the Chapter 13 trustee filed a Notice of Final Cure related to the mortgage claim, Proof of Claim No. 3, which by then had been assigned to Bayview Loan Servicing, LLC ("Bayview").  On July 10, 2020, Bayview filed its initial response, in which it claimed that

---

[1] The mortgage claim in issue was initially filed in this case by JP Morgan Chase Bank, N.A. On January 19, 2018, evidence of the transfer of the claim was filed, showing a transfer from Chase to Bayview Loan Servicing, LLC ("Bayview").  Then on October 14, 2020, further evidence of the transfer of the claim was filed, this time showing a transfer from Bayview to Community Loan Servicing, LLC ("Community"). The present motion was filed while Bayview was the holder of the claim. The evidentiary hearing was conducted by Community.

there remained outstanding prepetition arrears totaling $469.53 and postpetition arrears totaling $10,811.45. The Chapter 13 trustee promptly filed a motion under Fed. R. Bankr. P. 3002.1(h) for determination that in fact there remained no prepetition arrears, which prompted Bayview to file an amended response on August 7, 2020. In the amended response, Bayview indicated and acknowledged that all prepetition arrears had been cured; but, in relevant part, Bayview also continued to maintain that there existed postpetition arrears, now quantified at $10,707.96.

The same day, the Debtor, acting *pro se,* filed a response to Bayview's initial response, in which she demanded a determination that she is current on all postpetition obligations to Bayview as current holder of the mortgage claim. The Court construed and docketed this response as a motion under Fed. R. Bankr. P. 3002.1(h) for determination of whether the Debtor has paid all required postpetition amounts. This is the motion presently before the Court. Bayview opposes the motion. After an evidentiary hearing on the merits, held February 17, 2021, the Debtor and Community submitted proposed findings of fact and conclusions of law. The present memorandum of decision sets forth the findings of fact and conclusions of law required by Fed. R. Civ. P. 52(a)(1), made applicable by Fed. R. Bankr. P. 7052.

**FINDINGS OF FACT**

In this bankruptcy case, the Debtor filed and obtained confirmation of a chapter 13 plan in which, as the treatment for the secured claim filed and at that time held by Chase, she elected and incorporated the cure and maintain option set forth in 11 U.S.C. § 1322(b)(5). The plan, confirmed on December 3, 2015, had a sixty month term and an effective date of April 1, 2015. The confirmed plan thus obligated the Debtor to remain current on her postpetition mortgage obligations from April 1, 2015 through March 2020 and, per § 1322(b)(5), "while the case is pending."

As not infrequently occurs in chapter 13 cases, the Debtor fell behind on her postpetition monthly mortgage payments. This prompted Chase to move for relief from the automatic stay to

foreclose, asserting arrears totaling $15,748.08 [Docket #83]. The Debtor filed a response stating that she had made some additional payments, and the parties eventually entered a stipulation, dated April 6, 2017, that resolved the motion for relief (the "Stipulation"). The Court approved the Stipulation. In the Stipulation, the parties agreed, and I accordingly now find, that as of April 1, 2017, the Debtor owed $11,110.10 in postpetition payments, consisting of five payments (those that came due from December 1, 2016 through April 1, 2017) of $2,322.91 each, minus unapplied funds of $504.45. In the Stipulation, the Debtor agreed to cure this arrearage by making a stream of eight monthly payments, the first seven in the amount of $1,500.00 and the eighth in the amount of $610.10. These were to be paid on the first days of May through December, 2017. Together these would total $11,110.10 and fully cure the arrears through April 1, 2017.

Also in the Stipulation, the Debtor further agreed to make the regular monthly payments thereafter coming due, then in the amount of $2,322.91, commencing May 1, 2017, and continuing not only through the eight months during which cure payments were required but also monthly thereafter. The Stipulation further provided that, if the Debtor received notice of a change in the regular monthly payment during the term of the Stipulation, the Debtor "shall make the appropriate adjustment to the total monthly amount due."

The evidence at trial showed, and the parties agreed, that the Debtor made the eight cure payments (seven of $1,500.00 and one of $610.10) totaling $11,110.10 and thus fully cured the arrearage through April 1, 2017. The parties disagree as to whether the Debtor has fully paid the regular monthly mortgage payments that came due from and after May 1, 2017. The dispute boils down to determining first what payments were due and second what payments were made.

How much was due? Per the parties' Stipulation, for May, 2017, the payment amount remained $2,322.91. The remaining amounts can be taken from the Notices of Mortgage Payment Change that Chase and its successors filed in the case. These are largely consistent with the amounts used by

Community in the spreadsheet it introduced at trial to show, among other things, the amounts due for each month and when each month's payment was paid. There are two discrepancies, as detailed in the footnotes that follow. In both instances, I follow the Notices of Mortgage Payment Change, as the Stipulation between the parties so required (by obligating the Debtor to make ongoing monthly mortgage payments in amounts conforming to notices of mortgage payment change), and Community has adduced no reason to do otherwise (if it has even noticed the discrepancies).

Pursuant to a Notice of Mortgage Payment Change that Chase filed in April 2017, the amount increased to $2,672.15 beginning in June 2017 and continued unchanged for ten months through March 2018.[2] Pursuant to a Notice of Mortgage Payment Change filed by Bayview in March 2018, the amount increased to $2,724.02 beginning in April 2018, and it continued unchanged for twelve months through March 2019.[3] Pursuant to a Notice of Mortgage Payment Change filed by Bayview in March 2019, the amount increased to $2,577.03 beginning in April 2019, and it continued unchanged for twelve months through March 2020. Pursuant to another Notice of Mortgage Payment Change filed by Bayview in March 2020, the amount increased to $2,733.67 in April 2020, and it remained at that level through July 2020.  Pursuant to another Notice of Mortgage Payment Change filed by Bayview in July 2020, the amount decreased to $2,361.51 in August 2020, and it remained at that level through November 2020.[4] Pursuant to a Notice of Mortgage Payment Change filed by Community Loan Servicing, LLC in November 2020, the amount increased to $2,647.62 beginning in December 2020, and it remained at that level

---

[2] The four Notices of Mortgage Payment Change referenced in this paragraph were filed by Chase, Bayview, and Community in this bankruptcy case.

[3] In its calculations, Community used $2,724.02 as the payment amount for April through August 2018, but then used $2,750.64 for the following seven months, through March 2019.  Community has introduced no Notice of Mortgage Payment Change or other evidence for this increase, and I see none in the records of this case.

[4] In its calculations, Bayview used $2,631.51 as the payment amount for August through November 2020. The amount appearing on the applicable Notice of Mortgage Payment Change is $2,361.51. Per the parties' Stipulation, that number governs.  Bayview has introduced no Notice of Mortgage Payment Change or other evidence for this increase, and I see none in the records of this case.

4

through February 2021. The total amount due through February 2021 is thus $120,980.59, calculated as follows:

| Months | Number of Months | Payment | Total |
|---|---|---|---|
| May 2017 | 1 | $2,322.91 | $2,322.91 |
| June 2017 through March 2018 | 10 | $2,672.15 | $26,721.50 |
| April 2018 through March 2019 | 12 | $2,724.02 | $32,688.24 |
| April 2019 through March 2020 | 12 | $2,577.03 | $30,924.36 |
| April 2020 through July 2020 | 4 | $2,733.67 | $10,934.68 |
| August 2020 though November 2020 | 4 | $2,361.51 | $9,446.04 |
| December 2020 through February 2021 | 3 | $2,647.62 | $7,942.86 |
|  |  | **TOTAL** | **$120,980.59** |

In addition to these monthly payment obligations, the Debtor also became responsible during the case for a fee in the amount of $622. With this fee, her postpetition payment obligations, from and after May 1, 2017 through the date of the evidentiary hearing, totaled $121,602.59.

Against this total amount due, how much has the Debtor paid? The starting point for this determination is the spreadsheet that Community introduced into evidence. In an effort to meet its burden, Community adduced a spreadsheet detailing the Debtor's postpetition payment history. The same exhibit contains a sub-table setting forth the Stipulation payments. Bayview also offered the testimony of Zachary Jaffee, supervisor of its so-called "corporate witness team." Mr. Jaffee testified that he did not create the spreadsheet himself. Rather, Community's bankruptcy department had prepared it, using all "available" documents, including payment histories and bank records. Community did not come prepared to offer any of those underlying documents, and none were admitted into evidence. Nor does it appear that, in compiling this spreadsheet, Community complied with the requirements of Fed. R. Evid. 1006 governing the use of a summary or chart to prove the contents of voluminous writings. For these reasons, though this spreadsheet was admitted into evidence, its evidentiary value is limited.

5

Still, it serves one important purpose here. It itemizes the payments made on or after May 1, 2017 that Bayview concedes the Debtor made and for which it gives her credit. Excluding the cure payments totaling $11,110.10 (which abated obligations that arose through April 1, 2017), these total $111,840.04. At the evidentiary hearing, Community, through Mr. Jaffree, identified one further payment that should be added to this accounting, a payment the Debtor had made on February 15, 2021, just two days before the evidentiary hearing, in the amount of $2,647.22. Community acknowledged receipt of this payment. With the addition of this payment, Community concedes that it received from the Debtor payments totaling $114,487.26.[5] At the evidentiary hearing, the Debtor testified and otherwise adduced evidence of having made a number of payments, but she identified no payment that she contends she made that is not already credited to her in Community's accounting.

Community's spreadsheet includes an entry, dated March 4, 2020, showing a debit against these payments in the amount of $2,600.00, with an explanation stating "NSF Reversal." At the evidentiary hearing, Community offered no evidence or testimony about this entry. Mr. Jaffee did not purport to have first-hand knowledge of the underlying event or transaction. As Community bears the burden of proof here, especially as to items that would work against the Debtor's interest, and no evidence has been adduced to support this debit, I find it to be unsupported and give it no effect.

The Debtor contends that she is entitled to credit for two additional transactions, each being the payment of a monthly obligation from funds that the Debtor had already paid but that were as yet unapplied, held in a suspense account. In these transactions, the mortgagee, then still Chase, received no new money from the Debtor (and the Debtor does not contend otherwise). Rather, in each, Chase simply applied a credit balance from the Debtor's suspense account to satisfy a monthly payment obligation. These transaction occurred on July 3 and November 1, 2017; in both instances, the payment

---

[5] These payments, including the $2,647.22 paid on February 15, 2021, are itemized and tallied in an appendix to this memorandum of decision.

amount was $2,322.91. Community agrees that these transactions occurred; its accounting shows that they paid the installments due December 1, 2016 and March 1, 2017.  Community denies that these transactions should be counted as additional payments *of new money* from the Debtor. The Court agrees and finds that they are not additional payments of money. As Mr. Jaffee testified, an "unapplied funds" or "suspense" account is used by a mortgage servicer to hold funds received from a debtor when the amount paid is insufficient to pay off a full monthly contractual payment.  When further monies are paid that bring the amount of unapplied funds to more than enough to pay off the next owing monthly installment, the mortgagee (or its servicer) will transfer funds from the suspense account to satisfy the monthly payment obligation. Each of the two transactions in issue involved the disposition of money that the Debtor had already paid in and that had been credited to her in her suspense or unapplied funds account. The transactions simply changed the form of an existing credit:  from a credit in the suspense account to abatement of a monthly payment obligation.  To count these as additional payments from the Debtor would be to double count them, once when the monies in question were first paid from the Debtor to Chase and placed by Chase in the suspense account, and a second time when they were removed by Chase from the suspense account to pay down a monthly payment obligation.

At the evidentiary hearing, the Debtor also adduced evidence, a monthly mortgage statement she received from Community dated November 2, 2020, that showed that her unpaid postpetition payments as of that date totaled just $622 (for a fee that both parties agree she subsequently paid).  She contends that this statement amounts to evidence that, upon her payment of the $622, she was current on her postpetition payments. However, the Debtor also testified that, later in the same month, Community sent her a revised statement that showed a higher amount due. And Mr. Jaffee testified that the November 2 statement was erroneous; and, upon Community's realization of its error, it corrected the error by sending the later statement. In view of the fact that Community evidently believed the

November 2 statement to have been erroneous and issued in error, I do not find that the November 2 statement is proof that the Debtor's arrears as of that date were limited to $622. Such a conclusion would be at odds with the other evidence adduced at the evidentiary hearing.

**RULINGS OF LAW**

In addition to a discharge, the main goal of many chapter 13 debtors is to exit the bankruptcy process having cured their mortgage arrears, no longer at risk of foreclosure. To effectuate this goal, the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, permits a debtor, in a chapter 13 plan, to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any [. . .] secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). A debtor who elects this provision must, if the plan is confirmed and while the case is pending, make whatever payments come due under the mortgage loan while the case is pending, including the regular monthly payments. *Id*. § 1322(b)(5). This is often complicated by adjustable-rate mortgages that result in payment changes throughout the years-long period during which a debtor is making plan payments. *See In re Carr*, 468 B.R. 806, 807 (Bankr. E.D. Va. 2012) (discussing the "considerable problems" caused by home mortgages and post-petition fees). Rule 3002.1 was adopted to "ensure that at the end of a chapter 13 case, the debtor has made all payments required under the plan and exits chapter 13 with both a discharge and a current home mortgage loan." *In re Ferrell*, 580 B.R. 181, 184 (Bankr. D. S.C. 2017); *see also In re Howard*, 563 B.R. 308, 313 (Bankr. N.D. Cal. 2016).

While paragraph (b) of Rule 3002.1 sets the requirements for notice of payment changes, paragraphs (f) through (h) of the Rule are meant "to provide a prompt, efficient, and cost-effective means to determine whether there is a question as to the status of a debtor's home loan at the conclusion of the chapter 13 case." *In re Carr*, 468 B.R. 806, 808 (Bankr. E.D. Va. 2012). Upon the completion of the plan, the Chapter 13 Trustee is to file a Notice of Final Cure Payment pursuant to Rule

8

3002.1(f) that is served on the secured lender, the debtor, and counsel to the debtor. This notice "inform[s] the holder [of the claim] of its obligation to file and serve a response under subdivision (g)." Fed. R. Bankr. P. 3002.1(f).

Rule 3002.1(g) requires that "within 21 days after service of the notice under subdivision (f) of [Rule 3002.1], the holder shall file and serve on the debtor . . . a statement indicating (1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code." The statement must itemize the required cure or postpetition amounts, if any, that the holder contends remain unpaid as of the date of the statement. The statement is further required to be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f).[6] If either the trustee or the debtor disputes the response, he or she may file a motion, within 21 days after service of the response, for a determination of whether the debtor has cured the default and paid all required postpeition amounts, whereupon "the court shall, after notice and hearing, determine whether the debtor has cured the default and paid all required postpetition amounts." Fed. R. Bankr. P. 3002.1(h).

A claim for post-petition default under Rule 3002.1 is not entitled to a prima facie presumption of validity, as is a proof of claim. *See Id*. at 3002.1(g); *Kreidler v. Bank of N.Y. Mellon Trust Co. (In re Kreidler)*, 494 B.R. 201, 204 (Bankr. M.D. Pa. 2013). Courts have inferred "from the absence of a presumption of *prima facie* validity that the claimant bears the burden of proof under Bankruptcy Rule 3002.1(h)." *In re Ferrell*, 580 B.R. 181, 185 (Bankr. D. S.C. 2017), quoting *In re Rodriguez*, Case No. 08-80025-G3-13, 2013 WL 3430872, at *4 (Bankr. S.D. Tex. July 8, 2013). "If the mortgage creditor fails to submit evidence that establishes its entitlement to the post-petition amounts described in its supplement, the mortgage creditor has not met its burden of proof." *Id. See also In Re Hockenberger*,

---

[6] "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

9

2018 WL 1770172, at *4 (Bankr. N.D. Ohio Apr. 11, 2018). I agree with those courts on the allocation of the burdens.

As the party claiming that amounts have come due that have not been paid, Community bears, in addition to the ultimate burden of proof, the initial burden of identifying the amounts that have come due. I have found that the amount that the Debtor has been obligated to pay to remain current on her mortgage debt from May 1, 2017 through the date of the evidentiary hearing is $121,602.59, consisting of monthly payment obligations totaling $120,980.59 and a one-time fee of $622. As the party claiming that this obligation has been paid in full, the Debtor bears the responsibility of identifying the payments she contends she has made. Here, the Debtor has identified a number of payments she has made, but she has identified none that Community, in its accounting (as augmented at trial for the very last payment), has not acknowledged receiving and given her credit for. In essence, then, the parties are in agreement on the payments she has made. All that remains is to total them and compare that total to the amount owing. I find that the Debtor's payments total $114,487.26. The total amount due, $121,602.59, less the amount paid, $114,487.26, leaves a difference, a balance owing, of $7,115.33. As of February 17, 2021, the Debtor was not current on her postpetition obligations, but the arrearage was less than Community contends.

**CONCLUSION**

Accordingly, a separate order will enter declaring that as of February 17, 2021, the Debtor was not current on her postpetition obligations on the mortgage claim asserted in Proof of Claim No. 3-1 and that the arrears as of that date totaled $7,115.33.

Date: October 15, 2021

_____
Frank J. Bailey
United States Bankruptcy Judge

**Appendix**

| Payment Date | Amount |
|---|---|
| 5/22/2017 | $ 2,322.91 |
| 7/31/2017 | $ 2,672.15 |
| 8/31/2017 | $ 2,672.15 |
| 10/10/2017 | $ 2,672.15 |
| 12/15/2017 | $ 412.97 |
| 1/31/2018 | $ 2,672.15 |
| 2/27/2018 | $ 2,672.15 |
| 3/9/2018 | $ 5,344.30 |
| 5/4/2018 | $ 844.51 |
| 5/18/2018 | $ 2,672.08 |
| 7/2/2018 | $ 2,672.15 |
| 7/31/2018 | $ 2,672.15 |
| 9/10/2018 | $ 672.15 |
| 9/24/2018 | $ 820.44 |
| 10/15/2018 | $ 2,672.15 |
| 11/18/2018 | $ 2,720.00 |
| 12/14/2018 | $ 2,720.00 |
| 12/28/2018 | $ 2,720.00 |
| 1/4/2019 | $ 25.89 |
| 1/25/2019 | $ 37.95 |
| 2/1/2019 | $ 2,724.02 |
| 2/12/2019 | $ 186.34 |
| 2/24/2019 | $ 2,725.00 |
| 3/11/2019 | $ 2,742.02 |
| 4/22/2019 | $ 2,750.64 |
| 5/6/2019 | $ 2,578.00 |
| 6/14/2019 | $ 1,578.00 |
| 6/30/2019 | $ 2,578.00 |
| 7/31/2019 | $ 1,000.00 |
| 8/14/2019 | $ 2,580.00 |
| 9/29/2019 | $ 2,580.00 |
| 10/18/2019 | $ 2,580.00 |
| 11/30/2019 | $ 2,578.00 |
| 12/29/2019 | $ 2,580.00 |
| 1/31/2020 | $ 1,900.00 |
| 2/10/2020 | $ 700.00 |
| 2/29/2020 | $ 2,600.00 |
| 3/2/2020 | $ 2,577.03 |
| 3/23/2020 | $ 2,577.03 |

| Date | Amount |
|---:|---:|
| 4/6/2020 | $ 2,577.03 |
| 4/30/2020 | $ 2,733.07 |
| 6/2/2020 | $ 2,735.00 |
| 7/1/2020 | $ 2,735.00 |
| 7/14/2020 | $ 2,735.00 |
| 8/24/2020 | $ 2,362.00 |
| 9/18/2020 | $ 2,361.51 |
| 10/30/2020 | $ 2,362.00 |
| 11/13/2020 | $ 517.71 |
| 11/17/2020 | $ 622.00 |
| 12/15/2020 | $ 2,647.62 |
| 1/18/2021 | $ 2,647.62 |
| 2/15/2021 | $ 2,647.22 |
| **TOTAL** | $ 114,487.26 |